# EXHIBIT H

# AGREEMENT

This agreement (this "Agreement") is executed on December 30, 2019 (the "Effective Date") by and between:

(1) Base Media Technology Group Limited, a limited liability company incorporated under the laws of Hong Kong (the "Company");

(2) Harborcoat Holdings Limited, a limited liability company incorporated under the laws of Hong Kong ("Harborcoat");

(3) Remington Chase, on behalf of himself and each of the entities listed on Exhibit I hereto, ("Chase");

(4) Christopher Bremble ("Bremble"); and

(5) ███████████████

**WHEREAS**:

A. The Company is negotiating outside financing opportunities, the completion of which will prevent Harborcoat from having to enter into bankruptcy;

B. The parties have previously arranged a series of financing transactions for the Company and its related projects using several different investment and lending entities;

C. The parties would like to confirm the status of any and all transactions and associated rights and obligations amongst the parties and any and all rights and obligations between Chase and the Company and/or any of its Affiliates; and

D. The parties are entering into a new agreement selling majority control of the Company and Harborcoat (the "Transaction").

**NOW, THEREFORE**, the parties agree as follows:

### 1. Definitions

The following term shall have the meaning set forth below:

"**Affiliate**" means, with respect to any party, any other entity or individual that, directly or indirectly, controls, is controlled by or is under common control with such party; where "control" means the possession, directly or indirectly, of the right to control, direct or cause the direction of the management or policies, of such party, whether through the ownership of 50% or more in the voting securities of such party, by contract or otherwise; as well as any

1

and all subsidiaries, parent companies, officers, directors, employees, agents, attorneys, representatives, and their respective predecessors, successors and assigns, and all persons acting under, by, through, or in concert with any of them.

## 2. Agreement

2.1 The parties confirm that the Side Letter Agreement executed on 26 November 2019, is valid and binding on all parties.

2.2 Chase confirms that the only equity of the Company or Harborcoat that he, or any company he is affiliated with, will own upon completion of the Transaction is 5.0% equity ownership of the Company. Chase will hold such equity via a proxy agreement with Bremble and will have no additional rights. The parties confirm that there are no other outstanding agreements that represent any equity or other interest of Chase in the Company or any Company Affiliate, and that if there any outstanding agreements, including any such agreements with any of the entities listed on Exhibit I hereto, such agreements are hereby terminated, effective immediately upon the execution of this Agreement.

2.3 Chase confirms that he has not executed any agreement with any third party representing any rights or benefits due from the Company or Harborcoat except those explicitly set forth in this Agreement.

2.4 Chase confirms that any entity with Company ownership or with the "Base" logo will be closed promptly.

2.5 Chase confirms the Amended Loan Agreement dated 26 November 2019 (the "Amended Loan Agreement") discloses all funding provided to the Company and/or its Affiliates in the past from him or any of the entities on Exhibit I, or otherwise on his behalf or at his direction, has been obtained and transferred legally in compliance with all relevant banking and other laws and regulations.

2.6 The second paragraph of Section 2 of the Amended Loan Agreement is hereby terminated. The parties agree that the only payment owed by the Company or Harborcoat to Chase is USD 500,000 which shall be paid in RMB upon the funding event set forth in the Transaction.

2.7 Chase confirms that the only agreements regarding any outstanding production or project with Base are: (a) Wishdragon. Participation of 15% in the Base corridor with distributions as determined solely by the Company as set forth in the Wisdrgaon PFD; and (b) Lord of the West. The rights as set forth in the Investment Agreement (for Lord of the West) dated 26 November 2019.

2.8 Chase agrees to pay USD 450,000 for the construction of office space in Kuala Lampur, Malaysia owned by Harborcoat or its subsidiaries.

2.9 Chase further agrees to indemnify Bremble, ███████ the Company, and

Harborcoat for any liability they may face with respect to Chase contractual and investment activities with the Company and/or its Affiliates under any transaction documents to be executed by the Company and/or its Affiliates with Yixiang (Hong Kong) Investment Co., Ltd., Sunac Future Culture and Entertainment (Beijing) Co., Ltd., or any of their Affiliates.

### 3. Other

3.1 **Remington Chase Representation.** Remington Chase represents and warrants that he has full authority and legal capacity to enter into this Agreement on his own behalf and on behalf of each entity detailed on Exhibit I to this Agreement.

3.2 **Release.** Chase does hereby knowingly and voluntarily forever discharge and release the Company, Bremble and ▮▮▮▮ Harborcoat, and each of their Affiliates from any and all actions, grievances, obligations, costs, expenses, losses, suits, debts, claims, demands, liabilities, obligations, rights, damages, causes of action, and benefits, of whatever character, in law or in equity, known or unknown, suspected or unsuspected, matured or unmatured, of any kind or nature whatsoever, at any time prior to the Effective Date of this Agreement.

3.3 **Covenant Not to Sue.** In addition to waiving and releasing the claims covered by Section 2 above, Chase further agrees never to sue the Company, Bremble, ▮▮▮▮ Harborcoat or any of their respective Affiliates in any forum for any reason, including but not limited to claims, laws or theories covered by the general release language in Section 2.

3.4 **Assignment.** This Agreement may not be transferred, in whole or in part, by any party, without the prior written consent of the other parties.

3.5 **Successors.** This Agreement shall be binding upon the parties, and their heirs, representatives, executors, administrators, successors, insurers, and assigns.

3.6 **Entire Agreement.** This Agreement constitutes the entire agreement of the parties with regard to its subject matter, and supersedes all previous written or oral representations, agreements and understandings between the parties with regard to its subject matter.

3.7 **No Modification.** This Agreement may be changed only by a writing signed by authorized representatives of all parties.

3.8 **Severability; Reformation.** In the event that any one or more of the provisions contained in this Agreement will, for any reason, be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability will not affect any other provisions of this Agreement, and all other provisions will remain in full force and effect. If any provision of this Agreement is held to be excessively broad, it will be reformed and construed by limiting and reducing it so as to be enforceable to the maximum extent permitted by law.

3.9 **Confidentiality of Agreement.** Each party agrees that it will not disclose, or cause to be disclosed, the fact that this Agreement exists or the terms of this Agreement to any third party, whether orally or in writing, except to such party's attorneys, accountants, and/or tax advisors, or to the extent otherwise required by law, but only on the condition that such party advises such individual(s) in advance of disclosure that the existence, terms and conditions of this Agreement are strictly confidential and the individual(s) agree to be bound by this Agreement's confidentiality provisions.

3.10 **Governing Law.** This Agreement will be construed and interpreted and its performance governed by the laws of Hong Kong, without giving effect to its conflict of laws principles.

3.11 **Dispute Resolution.** Any dispute, controversy, difference or claim arising out of or relating to this Agreement, including the existence, validity, interpretation, performance, breach or termination thereof or any dispute regarding non-contractual obligations arising out of or relating to it shall be referred to and finally resolved by arbitration administered by the Hong Kong International Arbitration Centre ("**HKIAC**") under the HKIAC Administered Arbitration Rules in force when the Notice of Arbitration is submitted. The law of this arbitration clause shall be Hong Kong law. The seat of arbitration shall be Hong Kong. The number of arbitrators shall be three. The arbitration proceedings shall be conducted in English.

3.12 **Counterparts; Signatures.** This Agreement may be executed in any number of counterparts, each of which will be deemed to be an original and all of which together will constitute one and the same instrument. Facsimile or PDF signatures will have the same legal effect as original signatures.

3.13 **Headings; Interpretation.** This Agreement contains headings only for convenience and the headings do not constitute or form a part of this Agreement, and should not be used in the construction of this Agreement. The term "including" means "including without limitation".

*[Remainder of page intentionally left blank]*

IN WITNESS WHEREOF, the Parties have executed, or caused this Agreement to be executed by their duly authorized representatives, on the Effective Date.

**BASE MEDIA TECHNOLOGY GROUP LIMITED**

Signature: *[signed]*

Name / Title: CHRIS BREMBLE CEO / DIRECTOR

**HARBORCOAT HOLDINGS LIMITED**

Signature: *[signed]*

Name / Title: CHRIS BREMBLE / DIRECTOR

**CHRISTOPHER BREMBLE**

Signature: *[signed]*

*[redacted]*

Signature: _____

**REMINGTON CHASE**
**(On Behalf Of Himself And Each Of The Exhibit I Entities)**

Signature: _____

Signature Page

IN WITNESS WHEREOF, the Parties have executed, or caused this Agreement to be executed by their duly authorized representatives, on the Effective Date.

**BASE MEDIA TECHNOLOGY GROUP LIMITED**

Signature:_____

Name / Title:_____

**HARBORCOAT HOLDINGS LIMITED**

Signature:_____

Name / Title:_____

**CHRISTOPHER BREMBLE**

Signature:_____

███████████████████

Signature:_____

**REMINGTON CHASE**
**(On Behalf Of Himself And Each Of The Exhibit I Entities)**

Signature: *Remington Chase*

Signature Page

-EXHIBIT H-
Page 113

# Exhibit I

## Remington Chase Investment Entities

Production House Ltd.
Production House of Cinema, Inc.
Film Finances, Inc.
Production House International LLC
Pre Production Capital, LLC
Knightsbridge Entertainment Inc.
Starfall Ltd.
Production Capital Entertainment
████████████████████████

Production Capital Corp
Production Capital LLB

Exhibit I

-EXHIBIT H-
Page 114