# EXHIBIT M

# COMPANY EQUITY PURCHASE-SALE AGREEMENT AND INDEMNITY

This Company Equity Purchase-Sale Agreement and Indemnity is entered into as of October 26, 2021, between Kevin W. Robl ("Robl"), as buyer, and Ryan Vergari ("Ryan Vergari"), as seller (Robl and Ryan Vergari may hereinafter be cumulatively referred to as the "Parties"), with regard to, among other things, the equity ownership in Cambridge Sarnano, Ltd. (hereinafter the "Company"), a company organized under the law of the United Kingdom, with an address of 3rd Floor, 207 Regent Street, London, UK, W1B3HH.

WHEREAS, Robl, Production Capital LLC ("PC") and/or Base FX (defined below) asked the Company to make capital available to Base FX (or one of its affiliates or designees) to be utilized in connection with providing bridge loan and the like financing for pre-production or post-production visual effects (or otherwise in connection with the funding of certain pre-production or off budget obligations) in connection with various motion pictures (hereinafter referred to as the "Short Duration Loan");

WHEREAS, toward that end, the Company, as Lender, entered into a certain First Amended Revolving Credit Facility Agreement, dated August 1, 2019, with (i) Base Media Technology Group Limited, (ii) Shanghai Base Culture Media Co., Ltd. ("Base Media PRC-1"), (iii) Base Animation Malaysia, and (iv) Base Technology Group Limited ("Base Media PRC-2") (hereinafter and jointly and severally referred to as the "Initial Base FX Entities)," as Borrower, as amended by a certain Second Amended Revolving Credit Facility Agreement, dated April 10, 2020, by and between (i) Base Media Technology Group Limited (Base Media HK-1), (ii) Base Media PRC-1, (iii) Base FX International Limited (Base Media HK-2), (iv) Base Media PRC-2, (v) Base Digital Services Limited ("Base Media HK-3"), (vi) Base Productions Trinidad, (vii) Base FX Productions Switzerland AG, and (viii) Base Animation Malaysia (together with the Initial Base FX Entities, hereinafter, and jointly and severally, referred to as "Base FX"), as Borrower, on the one hand, and the Company, as Lender, on the other, in an amount up to One Hundred Million and No/100 Dollars ($100,000,000.00) in connection with Short Duration Loans (hereinafter cumulatively referred to as the "Revolving Credit Facility");

WHEREAS, further toward that end, the Company entered into a certain Authorized Agency Agreement, dated February 1, 2021, with BASE Digital Services, Limited (the "BDS Ltd."), a company organized and existing under the laws of Hong Kong, pursuant to which BDS Ltd. appointed and duly authorized the Company to act as its agent for the purpose of identifying, vetting and raising capital for Short Duration Loans with Base FX, and expressly authorized and granted to the Company the power of attorney-in-fact to enter into agreements on behalf of BDS Ltd. for the purpose of raising capital for Short Duration Loans;

WHEREAS, at all times, the Short Duration Loans presented to the Company, and all terms, dates and conditions thereof, were provided by Robl, PC and/or Base FX, and the Company itself never determined the terms, dates and conditions of such Short Durations Loans;

WHEREAS, in order to raise capital for such Short Durations Loans, the Company either directly or on behalf of BDS Ltd. entered into certain capital advance agreements ("CAAs") and settlement and installment payout of capital advance agreement ("SIPCAAs") with individual capital providers;

WHEREAS, the proceeds of the capital raised by the Company for Short Duration loans, whether by CAA or related obligation, were, in all instances, electronically wired to either Base FX or PC (and never retained by the Company);

WHEREAS, the Company has not been able to satisfy obligations owing under many of the CAAs and SIPCAAs as a result of delayed or non- payments on the underlying Short Durations Loans;

WHEREAS, pursuant to a certain September 19, 2021 Amendment (the "Amended Credit Agreement") to a certain Credit Agreement, dated June 30, 2021 (the "Original Credit Agreement"), PC expressly assumed, among other things: all obligations owing to the Company by Base FX under the Revolving Credit Facility; all obligations owing to individual capital providers under CAAs, SIPCAAs, and related obligations with the Company and BDS Ltd.; and all obligations owing as set forth in the Schedule of Obligations in Section 8 of the Original Credit Agreement; and

WHEREAS, to shield Ryan Vergari, the holder of equity in the Company from further exposure, Robl has agreed to purchase all equity in the Company from Ryan Vergari, and bear all legal exposure associated with the Company in any way connected with or to the Short Duration Loans, and the related CAAs, SIPCAAs, and related obligations;

NOW, THEREFORE, in consideration of the mutual benefits inuring to the Parties, and other good for and for valuable consideration, the receipt, adequacy and legal sufficiency of which the Parties each hereby acknowledge, IT IS HEREBY AGREED AS FOLLOWS:

SALE AND PURCHASE OF EQUITY

1. Ryan Vergari hereby sells, and Robl hereby purchases, all equity interest in the Company, such that Robl shall be the sole holder of equity in the Company.

CONSIDERATION

2. In consideration of the sale of such equity interest, Robl agrees to pay Ryan Vergari all fees owing to the Company in connection with outstanding Short Duration Loans.

### LEGAL RESPONSIBILITY AND INDEMNITY

3. Robl agrees to bear all legal responsibility associated with the Company. Robl further agrees to hold Ryan Vergari and the attorney for the Company, Chase Vergari, harmless and save each against any and all claims, liability, loss, expenses, suits, damages, judgments, demands, and costs (including reasonable legal fees and expenses) in any way arising out of the Short Duration Loans, and the related CAAs, SIPCAAs, and related obligations. Robl agrees to defend and settle at its sole expense all suits or proceedings against either Ryan Vergari or Chase Vergari in any way arising out of the foregoing.

### CONVENANTS

4. Robl covenants to facilitate the expeditious repayment of all monies owed to individual capital providers under the CAAs, SIPCAAs, and related obligations.

### REPRESENTATIONS

5. Robl hereby acknowledges that, for all Short Duration Loans presented to the Company, and all terms, dates and conditions thereof, were provided by Robl, PC and/or Base FX, and the neither Company itself, nor Ryan Vergari (nor Chase Vergari), ever determined the terms, dates and conditions of such Short Durations Loans. Robl further acknowledges that the neither the Company, nor Ryan Vergari (nor Chase Vergari), was involved in any way with the procurement of Short Duration Loans, the work on the motion pictures themselves, or any payment or other terms relating to the motion pictures.

### MISCELLANEOUS

6. The Parties each hereby acknowledge that each of them has received adequate and legally sufficient individual and mutual benefits and valuable consideration resulting from the obligations and promises made under this Agreement, and waive any and all objections, defenses and the like based on lack of adequate consideration.

7. This Agreement and the rights and parties hereunder shall be governed by and construed in accordance with the laws of the State of New York without giving effect to any conflict of law provision.

8. The Parties hereby irrevocably submit to the sole and exclusive jurisdiction of the state and local courts located in the Borough of Manhattan, City of New York if any dispute arises under, or otherwise associated with, this Agreement. In the event of any legal proceeding arising under, or otherwise associated with, this Agreement, the Parties each agreed to be noticed, receive and acknowledge service of, any process associated therewith by email at the designated emails set forth hereunder.

9. THE PARTIES KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT THEY MAY HAVE OR HEREAFTER HAVE TO A TRIAL BY JURY IN RESPECT OF ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT.

10. If any provision of this Agreement shall be held by a court of competent jurisdiction to be invalid or unenforceable, such provision shall be enforced to the maximum extent permitted by law and the remaining provisions shall remain in full force and effect.

11. The terms of this Agreement shall constitute the integrated agreement as between the Parties hereto as to the subject matter of this Agreement, and shall be binding on all heirs and assigns of the Parties hereto.

12. No consent or waiver under this Agreement shall be effective unless in writing.

13. This Agreement may be executed and delivered in counterparts, including by PDF e-mail, each of which shall be deemed to be an enforceable original and all of which together shall constitute one enforceable instrument.

IN WITNESS WHEREOF, the Parties hereto have duly executed and delivered this Agreement as of the date first above written.

As for Purchaser:

_____
Name: Kevin Robl
Email: k.robl@prod-cap.com


As for Seller:

_____
Name: Ryan Vergari
Email: ryan.vergari@gmail.com